# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 19-1602V
UNPUBLISHED

DAVID BUCKLEY,

             Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

             Respondent.

Chief Special Master Corcoran

Filed: October 17, 2022

Special Processing Unit (SPU);
Entitlement to Compensation; Table
Injury; Influenza (Flu) Vaccine;
Shoulder Injury Related to Vaccine
Administration (SIRVA)

*David John Carney, Green & Schafle LLC, Philadelphia, PA, for Petitioner.*

*Claudia Barnes Gangi, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT AND DAMAGES DECISION[1]

On October 15, 2019, David Buckley filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to him on November 8, 2018. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons detailed herein, I find Petitioner entitled to compensation, and I award damages in the total amount of **$103,500.00, representing Petitioner's actual pain and suffering.**

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Relevant Procedural History

A year and a half after the claim's initiation, Respondent filed his Rule 4(c) Report challenging compensation because (among other things) Petitioner failed to demonstrate that he received the relevant vaccination in his *left* arm, when the vaccination record indicates the *right* arm. ECF No. 22 at 4-5. Respondent further asserted that Petitioner failed to provide sufficient evidence to establish a causation-in-fact shoulder injury. *Id.* at 6-7. Shortly thereafter, Petitioner filed his Motion for Ruling on the Record on April 12, 2021. ECF No. 23.

In his Motion, Petitioner asserted that the evidentiary record demonstrates Petitioner received the flu vaccine in his left arm, and that his pain began within 48 hours of vaccination. ECF No. 23 at 1. Petitioner further requested $160,000.00 for past pain and suffering, plus $1,000.00 per year for future pain and suffering. *Id.* at 2. Respondent maintained the contrary, arguing that the affidavits submitted by Petitioner in support of vaccination in his left arm are not reliable, and submitting that the medical records do not support an onset within 48 hours. ECF No. 25 at 12. Respondent further deemed Petitioner's damages valuation too high; in the event that entitlement was found in favor of Petitioner, Respondent proposes the lesser sum of $67,000 in actual pain and suffering, with no future component. *Id.* at 13. Petitioner filed a Reply on September 23, 2021, reiterating his request for compensation. ECF No. 27.

The matter is ripe for adjudication.

## II.    Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Medical records created contemporaneously with the events they describe are generally considered to be more trustworthy. *Cucuras v.*

*Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *but see Kirby v. Sec'y of Health & Human Servs.*, 993 F.3d 1378, 1382-83 (Fed. Cir. 2021) (clarifying that *Cucuras* does not stand for proposition that medical records are presumptively accurate and complete). While not presumed to be complete and accurate, medical records made while seeking treatment are generally afforded more weight than statements made by petitioner after-the-fact. *See Gerami v. Sec'y of Health & Human Servs.*, No. 12-442V, 2013 WL 5998109, at *4 (Fed. Cl. Spec. Mstr. Oct. 11, 2013) (finding that contemporaneously documented medical evidence was more persuasive than the letter prepared for litigation purposes), *mot. for rev. denied*, 127 Fed. Cl. 299 (2014). Indeed, "where later testimony conflicts with earlier contemporaneous documents, courts generally give the contemporaneous documentation more weight." *Campbell ex rel. Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006); *see United States v. U.S. Gypsum Co.*, 333 U.S. 364, 396 (1948).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a Tdap vaccine. 42 C.F.R. § 100.3(a)(II)(C). The criteria establishing a SIRVA under the accompanying QAI are as follows:

Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury. *See* § 11(c)(1)(A)(B)(D)(E).

studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Factual Findings

At issue is whether Petitioner's November 8, 2018 vaccination was administered in his right or left arm. And if it was administered in his *left* arm, as alleged, whether Petitioner satisfies the QAI requirements for a Table SIRVA.

After a review of the entire record, including Respondent's Rule 4 Report and the parties' briefs, I find that Petitioner most likely received the vaccination in his left arm, and has otherwise preponderantly satisfied the QAI requirements for a Table SIRVA.[4] Specifically, I note the following:

- On October 17, 2018, Petitioner underwent a right ulnar nerve surgery, which involved his right elbow. Ex. 7 at 137. The surgery was performed by Dr. Michael Casey, an orthopedic surgeon. *Id.*

- On October 22, 2018, Petitioner answered a post-operative questionnaire. Ex. 7 at 136-137. Petitioner reported that he had taken off the wrap off his right arm and noticed bruising and swelling. *Id.* at 137.

---

[4] While I have not specifically addressed every medical record, or all arguments presented in the parties' briefs, I have fully considered all records as well as arguments presented by both parties.

- On October 31, 2018, Petitioner presented for a follow-up for his right ulnar nerve surgery and removal of sutures. Ex. 7 at 123, 127. He reported post-surgical elbow pain of 5/10 pain and some numbness/tingling. *Id.* at 127, 131. He also reported retuning to work and being active about his property. *Id.* at 123. Petitioner's right-hand dominance was noted, and he was advised of wound care, a home exercise program, and gradually increasing activities. *Id.* at 127.

- On November 8, 2018, Petitioner presented to his primary care physician ("PCP"), Dr. Jon McKellar, for a routine 6-month check-up with labs. Ex. 1 at 14-15. Dr. McKellar noted that Petitioner's elbow surgery was "working well." *Id.* at 14. Petitioner received the subject flu vaccination at this visit. *Id.* at 14. The administrator wrote that the vaccination was given in the "R del". *Id.* at 3.

- On December 18, 2019, during a follow-up for his right ulnar nerve surgery with Dr. Casey, Petitioner reported difficulty abducting his left shoulder since his flu shot six weeks ago. Ex. 7 at 111-113. Dr. Casey noted minor pain on extremes of motion. *Id.* at 112. Dr. Casey "instructed [Petitioner] in home exercises and ibuprofen for this and told him to return for that problem if he is not asymptomatic within a month." *Id.* at 113.

- On January 8, 2019, Petitioner presented to his PCP, Dr. McKellar, "with left shoulder pain that [Petitioner] states started the day after he got a flu shot on 11/8/18." Ex. 1 at 11. Petitioner had normal range of motion but weakness in the left rotator cuff; Dr. McKellar assessed Petitioner shoulder pain most consistent with a possible rotator cuff injury. *Id.* at 12.

- An x-ray taken on January 11, 2019, showed mild osteoarthritis in the acromioclavicular joint but no fractures or focal lesions were seen. Ex. 1 at 34; Ex. 5 at 4. An MRI of Petitioner's left shoulder, taken on January 18, 2019, showed a small full-thickness tear of the supraspinatus tendon and underlying tendinopathy. Ex. 1 at 31-32; Ex. 5 at 7.

- Petitioner was referred to an orthopedic surgeon and presented to Dr. Karl Knudsen on January 31, 2019. Dr. Knudsen noted "Left shoulder problems since November 2018. [Petitioner] is not sure of any specific trauma. He does realize he had a flu shot right when it started hurting. He is right-handed." Ex. 4 at 54. Dr. Knudsen noted severe range of motion restrictions

and left rotator cuff weakness. *Id.* Dr. Knudsen recommended surgery given the conservative steps already taken. *Id.*

- Petitioner received a left shoulder arthroscopic rotator cuff repair, biceps tenodesis, subacromial decompression, debridement of a subscapularis tear, and subacromial bursectomy on February 19, 2019. Ex. 4 at 46.

- On March 6, 2019, Petitioner began physical therapy for his shoulder post-surgery. Ex. 6 at 5. The physical therapist noted Petitioner's report of six months of pain that began insidiously. *Id.* Petitioner reported difficulty with personal hygiene, mild pain at rest, 7-8/10 pain with movement, and being off work since his surgery. *Id.*

- On April 2, 2019, Petitioner returned to Dr. Knudsen's office. Ex. 4 at 25. He was advised that he could not yet return to work and to schedule an appointment in a month to discuss possible return to work. *Id.* at 24.

- Petitioner returned to Dr. Knudsen on May 1, 2019 and was cleared to return to his full work duties; he was directed to continue with physical therapy. Ex. 6 at 8.

- On May 31, 2019, it was noted at physical therapy that Petitioner only had minor pain with movement and had regained 90% of his left shoulder range of motion. Ex. 6 at 80. He was cleared for light weight resistance training and was noted to be back at full work duty. *Id.* at 82-83. Between March 6, 2019 and May 31, 2019, Petitioner attended twenty-six physical therapy sessions. *Id.*

## 1. Situs of Vaccination

I find that the records taken in their totality solidly support Petitioner's contention that the November 2018 vaccination was likely administered in his left arm. The only medical record indicating otherwise is Petitioner's initial vaccination record. Ex. 1 at 14. Respondent argues that this record is more likely correct because it is handwritten and could not have been computer data-entry error. ECF No. 25 at 9.

However, handwritten records are not infallible (even if they can be deemed to correctly identify vaccination situs in many cases). And here, the record must be weighed against Petitioner's reports of a left arm pain in the six weeks after vaccination. Thus, when Petitioner first reported left shoulder difficulty to Dr. Casey in mid-December (the first such recorded instances), he related the issue to the November vaccination. Ex. 7 at

111-113. In addition, Petitioner's personal circumstances at the time support a finding of left arm situs. Given his then-recent right arm surgery and the relative proximity to the vaccination, it would be unlikely for Petitioner to misremember or misreport the site of his vaccination at his December 18, 2018 visit. Furthermore, Petitioner's affirmation that the vaccination was administered in his left arm is supported by the fact that he is right-hand dominant and was only three weeks out from a right elbow surgery at the time of vaccination. *See* Ex. 7 at 123, 137. And then after the December visit, Petitioner continued to consistently relate his left arm pain to the vaccine. Ex. 1 at 11; Ex. 4 at 54. Thus, preponderant proof supports Petitioner's contention about situs.

### 2. Table SIRVA QAI Requirements

#### a. Prior Condition

Respondent does not dispute Petitioner has met the first requirement under the QAI for a Table SIRVA. Additionally, I do not find any evidence that Petitioner suffered a pre-vaccination history of problems that would explain his post-vaccination shoulder symptoms. Accordingly, I find that Petitioner has met this first criterion to establish a Table SIRVA.

#### b. Onset of Pain

A petitioner alleging a SIRVA claim must also show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(II)(C)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

Respondent's asserts "it is unclear" whether Petitioner's left shoulder pain began within the appropriate timeframe. ECF No. 25 at 12. Respondent questions the reliability of the affidavits submitted by Petitioner and Petitioner's family, which affirm that Petitioner's shoulder pain began within 48 hours of vaccination. *Id.* at 12. Specifically, Respondent points to Mrs. Buckley's attestation that Petitioner could not shovel snow around Thanksgiving, on November 6, 2018 (which appears to be a typo and should be November 16, 2018 – even Respondent admits that Mrs. Buckley may have intended to write November 16, 2018 as she was discussing Thanksgiving plans) and represents that "a review of historic weather data for Kalmath Falls, Oregon, confirms that there was zero precipitation between November 4 ant 7 …[and] between November 14 and 17, 2018." *Id.* at 11-12. Respondent concludes that "Mrs. Buckley's recollections are less than reliable." *Id.* at 12. Respondent also argues that Petitioner did not report pain when he first reported a left shoulder issue and later reported a duration of pain that would place onset prior to vaccination. *See id.* at 12.

7

After review of the entire record, I find that Petitioner has offered preponderant evidence to establish that he more likely than not began experiencing shoulder pain within 48 hours of his November 8, 2018 vaccination. When Petitioner first reported a left shoulder issue to Dr. Casey in December 2018 (approximately six weeks after vaccination), he specifically identified the prior vaccination as the inciting event. Ex. 7 at 111. Though the record noted Petitioner's report of "difficulty abducting" rather than "pain," Dr. Casey noted pain when testing range of motion. *See id.* at 112. At Petitioner's next visit for left shoulder pain, just a couple weeks later, he specified to Dr. McKellar that his pain began *the day after* he received a flu shot on November 8, 2018. Ex. 1 at 11. Similarly, Dr. Knudsen documented Petitioner's report of "a flu shot right when [his left shoulder] started hurting." Ex. 4 at 54. Thus, it would appear that limitations in range of motion and, at least, some pain as well, all began within 48 hours of vaccination. While the physical therapy intake record on March 6, 2019 indicates "approximately 6 months of pain began insidiously that has worsened" (placing onset prior to vaccination), this statement is a rough estimation that does not strongly undermine the evidence supporting a Table onset. *See* Ex. 6 at 5. Petitioner's earlier contemporaneous records are certainly, as a rule, more probative than a later approximation that may have been a mathematical error on the part of Petitioner or the therapist documenting the session. Overall, the medical records strongly support a finding of onset within 48 hours.

In addition to his medical records, Petitioner filed four affidavits in support of his claim: two personal affidavits, the affidavit of his wife – Brenda Buckley, and the affidavit of his adult daughter – Angela Sutton. Ex. 2, 6, 9, 10. Petitioner affirmed that when he received the vaccination, the administrator said, "oh, your shoulder did not like that." Ex. 2 ¶10. Then he had "pain in [his] shoulder through the rest of the day and night." *Id.* On November 10, 2018, his "left shoulder started to progressively worsen with the pain, discomfort, and soreness." *Id.* Petitioner affirmed reporting to Dr. Casey on December 18, 2018 that his left shoulder pain began immediately after the flu shot and "got progressively worse about two days afterwards." *Id.* ¶11. In his supplemental affidavit, Petitioner also affirmed telling the nurse at Dr. McKellar's office on January 8, 2019 about "how bad [his] arm was getting and that it had started two days after [his] flu shot." Ex. 10 ¶4.

Petitioner's wife, Brenda Buckley, generally corroborated Petitioner's affidavits and medical records. Ex. 8. According to Mrs. Buckley, her husband did not like needles and complained to her about his left shoulder for the rest of the day and night post-vaccination. *Id.* ¶9. "Over the next two days, David continued to complain to me that his left shoulder was in a lot of pain." *Id.* ¶10. Mrs. Buckley affirmed that Petitioner could not shovel snow so they had to cancel their Thanksgiving plans with family.[5] *Id.* ¶10. Mrs. Buckley

---

[5] If Respondent is correct that it was not yet snowing in November 2018, Mrs. Buckley's affidavit is accordingly less reliable. However, affidavits have limited value in comparison to medical records, and the

additionally recalled a windstorm in December of 2018 that blew over a tree in their yard; Petitioner was unable to take care of it due to his shoulder when prior it would have been "no big deal, because [Petitioner] would have just gone out with the chainsaw and cut it up for firewood." *Id.* ¶14.

Petitioner's daughter, Angela Sutton, lived in the same town as her parents during the relevant period. Ex. 9 ¶1. According to Ms. Sutton, she spoke with Petitioner in the days following his November 8, 2018 vaccination and Petitioner continued to mention how he had pain and discomfort where he received the flu shot. *Id.* ¶ 8. Ms. Sutton did not provide dates or context but affirmed that "every time we discussed his left shoulder pain and decreased range of motion, he told me that it started after he got the flu shot on November 8, 2018." *Id.* at ¶10. She also affirmed that in December 2018, Petitioner could not help string-up Christmas lights when she asked him to help, so instead he watched after her son. *Id.* ¶11.

The totality of the records produced in this matter support a finding of onset within 48 hours. Almost all of Petitioner's reports to his treating physicians indicate immediate pain followed by worsening symptoms, which is consistent with his affirmation of discomfort and pain worsening by the second day after vaccination. Ex. 1 at 11; Ex. 2 ¶10; Ex. 7 at 111. The affidavits by Petitioner's family members are also generally supportive of onset within 48 hours, even if in some cases their probative value is lessened by vagueness or other reasons to question reliability. The overall balance of evidence supports a finding that Petitioner's pain began within 48 hours of the vaccination.

Accordingly, I find that Petitioner has met this criterion to establish a Table SIRVA.

### 3. Scope of Pain and Limited ROM

Respondent has not contested that Petitioner meets this criterion. In addition, the medical records document pain and limited range of motion only in Petitioner's left shoulder following his flu vaccination. *See, e.g.*, Ex. 4 at 54. Thus, I find that Petitioner has demonstrated by a preponderance of the evidence that his pain and reduced range of motion were limited to the shoulder in which the flu vaccine was administered.

### 4. Other Condition or Abnormality

Respondent has not contested that Petitioner meets this criterion. I do not find evidence of any other condition or abnormality in the medical records that would explain

---

medical records herein strongly support the conclusion that Petitioner's pain began within 48 hours of his vaccination and progressed thereafter.

Petitioner's post-vaccination symptoms. Petitioner has met this criterion to establish a Table SIRVA.

### C.  Other Requirements for Entitlement

In light of the lack of additional objections and my own review of the record, I find that Petitioner has established all the requirements for a Table SIRVA claim. However, even if a petitioner has satisfied the requirements of a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c), i.e. receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). Those elements in this matter are established or undisputed. Petitioner is entitled to compensation in this case.

### III.    Damages

### A.  Legal Standard

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Berge v. Sec'y Health & Human Servs.*, No. 19-1474V, 2021 WL 4144999, at *1-3. (Fed. Cl. Spec. Mstr. Aug. 17, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

---

[6] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3(Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

### B. The Parties' Arguments

Citing seven[7] prior damages determinations, Petitioner requests $160,000.00 in past pain and suffering and $1,000.00 per year for future pain and suffering. ECF No. 23 at 1, 21-30. He asserts that his course of treatment – "an x-ray and MRI of his left shoulder, left shoulder surgery, six orthopedic evaluations….and twelve weeks of physical therapy" – warrants an award reflective of a severe SIRVA claim. *Id.* at 30. Specifically, Petitioner argues that the floor for pain and suffering in SIRVA cases involving surgeries is $110,000.00, citing *Collado*, *Dobbins*, and *Wilt*. *Id.* at 25-26. Petitioner emphasizes that his medical records support a pain and suffering award above that sum because the "time sequence should show that his injury was so severe that he quickly and consistently reported it to his treating physician." *Id.* at 27. Petitioner does not indicate why he believes a future pain and suffering component is appropriate in his case, however, other than stating that he "will likely continue to experience pain and suffering into the indefinite future." *Id.* at 20; ECF No. 27 at 9.

Respondent, by contrast, proposes an award of no more than $67,500.00 for *all* pain and suffering. ECF No. 25 at 2, 13. He argues that the medical records relevant to damages in this case only span from November 2018 to May 2019 - a period of less than seven months. *Id.* at 14. Respondent further notes that Petitioner was cleared to return to full work duties by May 15, 2019, and on May 31, 2019, Petitioner's strength was returning, he had occasional minor pain of 2-3/10 with movement, and he had returned to 90% of his active range of motion with unremarkable passive range of motion. *Id.* at 15, citing Ex. 6 at 83. Thus, Respondent maintains that "[P]etitioner has significantly overvalued his pain and suffering," citing a lack of pre-surgery physical therapy or steroid injections, surgery fairly-soon after onset, and only mild levels of pain with improved functional capacity seven months post-vaccination. Respondent suggests that *Weed,[8]* in which $105,000.00 was awarded, presents similar but significantly more compelling facts than those in this matter – meaning that an even lower sum is appropriate.

---

[7] *Wallace v. Sec'y of Health & Human Servs.*, No. 16-1472V, 2019 WL 4458393 (Fed. Cl. Spec. Mstr. June 27, 2019) ($125,000.00 awarded for pain and suffering), *Curri v Sec'y of Health & Human Servs.*, No. 17-432, 2018 WL 6273562 (Fed. Cl. Spec. Mstr. Oct. 31, 2018) ($130,254.11 awarded for pain and suffering), *Reed v. Sec'y of Health & Human Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) ($160,000.00 awarded for pain and suffering), and *Schoonover v. Sec'y of Health & Human Servs.*, No. 13-1243V, 2020 WL 5351341 (Fed. Cl. Spec. Mstr. Aug. 5, 2020) ($200,000.00 awarded for past pain and suffering and $1,200.00 per year for future pain and suffering); *Collado v Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Sepc. Mstr. June 6, 2018) ($120,000.00 awarded for actual pain and suffering); *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) ($125,000.00 awarded for actual pain and suffering); *Wilt v. Sec'y of Health & Human Servs.*, No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020) ($110,000.00 awarded for actual pain and suffering).

[8] *Weed v. Sec'y of Health & Human Servs.*, No. 18-1473V, 2021 WL 1711800 (Fed. Cl. Spec. Mstr. Mar. 30, 2021).

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that Petitioner was a competent adult at all relevant times, with no impairments that would impact his awareness of his injury. Therefore, I analyze the severity and duration of Petitioner's injury. I review the same record relied upon to determine entitlement, consider prior awards for pain and suffering SIRVA cases, and rely upon my experience adjudicating these cases.

As a preliminary matter, I do not find an award for *future* pain and suffering appropriate in this matter. Petitioner alleges continued "severe pain, discomfort, and decreased range of motion that affects [his] daily job performance." Ex. 2 ¶16. However, the only evidence supporting Petitioner's assertion of continued pain are statements made by Petitioner and his wife in their affidavits. Ex. 2 ¶5; Ex. 8 ¶18; Ex. 10 ¶8-10. He asserts that he has not returned to the doctor because it is cost prohibitive and "does not mean that [his] injury has completely healed or resolved." Ex. 10 ¶10. This is not sufficient to support Petitioner's claim for future pain and suffering, particularly as Petitioner was cleared for work in May of 2019 and had regained almost complete range of active motion by May 31, 2019. Ex. 6 at 80.

This matter is otherwise straightforward. Petitioner has not presented any special circumstances (such as inability to take pain-medication, complicated surgeries, or caring for a newborn or terminally ill parent, etc.) that would compound pain and suffering. Petitioner first reported his left shoulder pain six-week post-vaccination, received an x-ray and an MRI, experienced progressively worsening discomfort and pain for approximately three months before undergoing an arthroscopic surgery, and then participated in 26 physical therapy sessions over the span of three months. Ex. 5 at 4-7; Ex. 4 at 46-54; *see generally* Ex. 6. By approximately seven months post-vaccination, Petitioner had nearly full range of motion, was cleared for work, and only had minor pain with movement. *See* Ex. 6 at 80. And I otherwise find that an award of actual pain and suffering is sufficient under the circumstances to take into account any generalized lingering complications of Petitioner's injury.

Petitioner also unpersuasively argues that there is an automatic "floor" of at least $100,000.00 for SIRVA cases involving surgeries. In fact, I have awarded less than this amount in several cases where a petitioner required surgery. *See, e.g., Shelton v. Sec'y of Health & Hum. Servs.,* 2021 WL 2550093, at *1, 9; *Hunt v. Sec'y of Health & Hum. Servs.*, No. 19-1003V, 2022 WL 2826662, at *1, 10 (Fed. Cl. Spec. Mstr. June 16, 2022). However, the fact that Petitioner required arthroscopic surgery to alleviate his symptoms does inherently reflect a greater level of injury and thus pain and suffering. It is thus not

unreasonable to apply a baseline six-figure "yardstick" to SIRVA pain and suffering demands in cases involving surgery (although one that can be rebutted) – and it is for all these reasons that the best comparables under the circumstances are those involving surgery.

Here, most of the comparables cited by Petitioner involved significantly more severe courses, and thus are not useful in determining Petitioner's award. Petitioner cites seven cases but not all provide useful guidance. The *Collado* petitioner, for example, suffered more demonstrated intensive pain both prior to and after surgery, while the *Dobbins* petitioner had a similar medical course but with additional compelling circumstances, such as caring for her terminally ill mother and missing out on a tennis state championship due to her inability to play. *Collado,* 2018 WL 3433352, at *6-7 ($120,000 awarded for pain and suffering); *Dobbins*, 2018 WL 4611267, at *12 ($125,000 awarded for pain and suffering). The most comparable case cited by Petitioner, *Wilt,* involved a petitioner who reported her pain within a week, attended physical therapy prior to and after surgery, chiropractic sessions, and reported residual effects at ten months post-vaccination. *Wilt*, 2020 WL 1490757, at *15-16 ($110,000 awarded for pain and suffering). The other cases cited by Petitioner, *Wallace, Curri, Schoonover,* and *Reed,* resulted in awards above $120,000.00, which I deem to exceed what the facts of this case suggest is most appropriate.

Instead, I find the facts and circumstances suffered by Petitioner quite similar to those suffered by the petitioner in *Cates*, who received a pain and suffering award of $108,000.00. *Cates v. Sec'y of Health & Hum. Servs.*, No. 18-0277V, 2020 WL 3751072 (Fed. Cl. Spec. Mstr. June 5, 2020). The *Cates* petitioner's SIRVA injury also lasted approximately seven months, and the injured party underwent arthroscopic surgery a few months post-vaccination. *Cates*, 2020 WL 3751072, at *3-4. However, the *Cates* petitioner experienced severe pain levels for a longer period and received a cortisone injection while Petitioner in this matter attended more physical therapy sessions. The comparable case provided by Respondent, *Weed*, resulted in a similar award ($105,000.00) for pain and suffering. The *Weed* petitioner underwent arthroscopic surgery for rotator cuff repair two months post-vaccination and was largely recovered between seven- and ten-months post-vaccination (nearly full range of motion and good resistance). *Weed*, 2021 WL 1711800 at *4. However, the *Weed* petitioner reported her pain just one week after vaccination and required prednisone for pain relief prior to surgery.

Petitioner's pain and suffering award should be slightly lower than what was awarded the *Cates* petitioner, and nearly equivalent to *Weed*, but perhaps a bit lower. Therefore, I find that a pain and suffering award of $103,500.00 is appropriate in this matter.

**Conclusion**

For the reasons discussed above and based on consideration of the record as a whole, **I find that $103,500.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[9]

Based on the record as a whole and arguments of the parties, **I award a lump sum payment of $103,500.00 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[10]


**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[9] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.